[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO ENFORCE SETTLEMENT AGREEMENT (#112)
On December 4, 2002, the defendant MBNA America Bank ("MBNA") filed a motion to enforce a settlement agreement in this case. The court set the matter down for an evidentiary hearing, originally scheduled for January 28, 2003 and ultimately conducted on February 3, 2003. At the hearing the plaintiff Richard Savitt ("Savitt"), an attorney representing himself in this matter, Attorney Samuel Neves and Attorney Joseph Moniz ("Moniz") testified and certain documents were introduced into evidence.
The court makes the following findings of fact. Savitt filed this action, in six counts, on his own behalf against MBNA on November 5, 2001. The case arose out of a dispute Savitt had with MBNA regarding an earlier agreement he had entered into with MBNA to settle outstanding balances on two credit card accounts in exchange for MBNA's agreement to report to the national consumer credit reporting agencies that both accounts were settled. This action was brought because MBNA had allegedly failed to fulfill its agreement to report to the credit agencies. Prior to bringing this action, Savitt had attempted to settle his dispute with MBNA. At the time Savitt brought this action, he was a practicing attorney in Connecticut and also in New York.
Savitt and Moniz, who was representing MBNA's interests in this case, engaged in settlement discussions in the spring of 2002. In a letter dated April 26, 2002, faxed from Savitt to Moniz, Savitt initially rejected an offer of $2,500 made by an attorney from MBNA and demanded $5,000. (Plaintiff's exhibit B.) However, by some time in late April or early May, Savitt had reached an agreement with Moniz to settle this case with MBNA paying $2,500 to Savitt and providing a letter to the credit reporting agencies and both parties executing a mutual release, On May 10, 2002, in response to Savitt's concerns that the money be sent to him immediately and that time was of the essence, Moniz sent a letter to Savitt indicating that he had requested a payment check from MBNA and that they were rushing it. Furthermore, in pursuit of the agreement, CT Page 1875 Savitt drafted a release which he faxed to Moniz on May 20, 2002 with a handwritten note that states: "Dear Joe, Let me know if this is OK and who will sign for MBNA." (Defendant's exhibit 1.)
On May 30, 2002, apparently frustrated with the slowness of the proceedings, Savitt sent another communication to Moniz by fax demanding the "check, release and letter eliminating my credit history with MBNA by tomorrow at 5:00 p.m. [or] all previous settlement offers will be rescinded." (Exhibit A.[1]) Notwithstanding this threat, on June 3, 2002, Savitt responded to a "Settlement Agreement and Release" faxed to him on May 31, 2002. (Exhibit 3.) This agreement and release contained all the previously agreed upon terms for settlement: a payment in the amount of $2,500, a letter to the credit reporting agencies and a mutual release. Savitt's only response was to request a change to the release asking for the law of New York to control and another demand for immediate payment.[2] The next day, June 4, 2002, Moniz sent a check in the amount of $2,500 to Savitt and asked him to hold it escrow while the changes he had requested in the settlement agreement were made. (Exhibit 2.)
Although Savitt testified that he believed there was no agreement to settle at the time he received the check, Savitt did not offer any evidence that supported his testimony. Certainly, he did not communicate any rescission or repudiation of the agreement to MBNA after June 4, 2002. To the contrary, Savitt introduced a letter he wrote to Moniz, dated August 28, 2002, in which he asked Moniz to forward to him "a fully executed release" and complained that "[i]t has now been almost three (3) (sic) months since same was promised." (Exhibit C.) Further, Savitt did not reject or return the settlement check from MBNA that Moniz forwarded to him.[3]
"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." (Citations omitted.) The parties entered into the settlement, the parties agreed on the terms of the agreement. DAPFinancial Management Co. v. Mor-Fam Electric, Inc., 59 Conn. App. 92,97-98, 755 A.2d 925 (2000). This requires the court to resolve any issues of credibility that may arise on this issue. Id., 98. The "determination of what the parties intended to encompass in their oral agreement is a question of the intention of the parties and an inference of fact."Thomsen v. Aqua Massage International, Inc., 51 Conn. App. 201, 205,721 A.2d 137 (1998). A settlement agreement that is freely bargained is binding on the parties and cannot be repudiated by either side. SeeMorrissey v. Joubert, Superior Court, judicial district of New Haven, Docket No. 367668 (Silbert, J., Mar. 24, 1999). CT Page 1876
Although Savitt testified that there was no agreement to settle this matter, the court does not credit his testimony. Indeed, it appears that Savitt all along wished to resolve his disputes with MBNA by way of settlement. Prior to commencing this lawsuit, he attempted settlement with an attorney working within MBNA and apparently continued those discussions after this lawsuit was filed, according to his testimony. Moreover, the court must conclude that, as a practicing attorney in both New York and Connecticut, Savitt has experience in negotiating settlements and is sophisticated enough to understand the implications of his conduct and actions.
The credible evidence presented convincingly establishes that by late April or early May 2002, the parties had agreed to settle this matter and that the terms of the settlement agreement were clear and unambiguous and are not in credible dispute before this court. Those terms were that MBNA agreed to pay Savitt $2,500, MBNA agreed to send a letter to the credit reporting agencies requesting deletion of the disputed MBNA accounts from Savitt's consumer credit files, and MBNA and Savitt agreed to execute mutual releases. Everything done by the parties after that time was consistent with their agreement; releases were drafted, a check issued in the agreed amount and a letter was sent to the credit agencies.[4]
Nothing that followed the parties' agreement to settle created a new condition or amounted to a mutual rescission of the agreement.
An agreement to settle a lawsuit is binding upon the parties and must be enforced by the court. Accordingly, the motion to enforce the settlement agreement is granted and the court issues the following orders:
1. The parties shall execute, and serve upon each other, the mutual release within fifteen days of the date of the filing of this decision.
2. The plaintiff, Richard Savitt, shall withdraw this action within fifteen days of the filing of this decision or a judgment of dismissal with prejudice will enter automatically.
LINDA K. LAGER, JUDGE